v. Ahmed Salim Faraj Bukhatallah, also known as Ahmed Abukhatallah, also known as Ahmed Bukhatallah, also known as she. Mr. Lennertz for the appellant, Ms. Wright for the appellate. Mr. Lennertz, good morning. Thank you, Your Honor. Good morning. And may it please the court, Dan Lennertz for the United States, if I might please reserve two minutes for rebuttal. When this court reversed the district court's initial 22-year sentence as unreasonably low, it declared that that sentence was far lower than could be justified on this record. And it repeatedly emphasized that not only had the district court failed to justify its massive downward variance from the bottom of the guidelines that would apply even accounting for acquitted conduct, but that it could not do so on this record. The district court nonetheless, on resentencing, increased its initial substantively unreasonable sentence by a mere six years, continuing to vary downward by more than a decade from the bottom of the guidelines that would apply even accounting for acquitted conduct. That 28-year sentence remains shockingly low, given the gravity of Catala's terroristic offenses and the need to deter similar attacks from occurring in the future. Help me out here, because when a district court judge sentences, they have the opportunity to use the guidelines, which are advisory, and then you have to give sufficient rationale if you're going to vary, and then, of course, there's statutory reasons to depart. They have already had a remand and then went up six years, providing some additional rationale. What I would not like us to do is be perceived as dictating a sentence. And so, tell us more about particular legal reasons that would be sent back as a rule or something that the district court substantially aired, et cetera, because otherwise it looks like we're saying, we're not going to be happy unless you get to 40 years. I think that the court can look at the reasons, the justifications the district court gave on remand and find fault with them without declaring some broad rule that would apply in every case. For example, take the terrorism enhancement. The district court didn't find, at the first sentencing, that the terrorism enhancement somehow overstated Catala's conduct. But yet, at the second sentencing, it declared that this act of terrorism lacked many of the hallmarks of the crimes that Congress was looking at when it created that enhancement. Well, that reasoning is both factually and legally erroneous. Factually, there is no more quintessential crime of terrorism than a completed terrorist attack on a U.S. diplomatic facility abroad during which Americans are murdered, including the first sitting U.S. ambassador to be killed in the line of duty in more than 40 years. Okay, I understand that this was bad. I'm not denying that. But again, for example, do you feel like acquitted conduct was already taken into account with respect to the reduction in the guidelines from life to 40? Yes, Your Honor. That's what I'm trying to get at. Do you believe there was some over-accounting for some of that, and then that's why that sentence became lower? It does appear that the district court was fixated on the acquittals to an erroneous degree. It emphasized at the end of its resentencing, it said, most importantly, the government has failed to prove the most significant charges here. But that ignores the significance of the crimes for which Katala was convicted. If you took out the acquittals and the government never charged them, and you thought of this as a case in which Katala is only charged with the four crimes he was convicted of, providing material support to terrorists, conspiracy to do so, destroying a U.S. diplomatic facility while putting Americans' lives in danger, and carrying a semi-automatic weapon while doing so, on the facts of this case, anyone would think that warrants a life sentence. And on the facts of this case, the guidelines would be 40 years to life. Well, apparently not anyone, because Judge Cooper doesn't. Judge Cooper doesn't. But again, that's because he's focused on the government's failure, the jury's acquittals of the murders, as though that suggests some meaning for the convictions. I think he thinks the convictions are less serious because the jury acquitted of the murders. But that's not so. I mean, I think Gailani highlights that. That's a case in which the defendant was acquitted of 280-some counts. I think, counsel, that we can find some legal errors in the court's reasoning, things like, as you've mentioned, for him to just, I guess, disregard or not give the proper account to the reversal after the first sentencing, where this court said, you can't characterize this as a property crime, given that there were these two terrorism convictions, and yet he seems to do the same thing again. So I don't think it's difficult to find error or fault with some of the analysis that the district court did. But I think what Judge Childs might be getting at, and which I've been puzzling about, too, is there's definitely potentially legal error for which we could remand. But then what is it that determines what's actually substantively reasonable? Because that seems to be something that's difficult to pin down using legal doctrine or whatever, and it just seems that the government has the sense that 28 is too low. And I guess I think what Judge Childs might have been trying to get at, and also troubles me, is, is there some number that we think it has to be in order to be substantively reasonable? And how do we arrive at that number? Because what I see in this remand is, we sent it back, and the district court judge doesn't have the same view of what's substantively reasonable as the government. And there is a sense in this transcript that I've read pretty carefully of him just trying to very downward to get to where he thinks there is a substantively reasonable sentence. And sure, we can say there was error in his analysis, in his reasoning, but at the end of the day, he's going to come up with a number. And it's just hard for me to get my mind around, like, what is it that would be substantively reasonable? What do you think would be substantively reasonable? And how do we decide what's substantively reasonable? Before you answer that, what would be substantively reasonable is following the guidelines. My two colleagues sentenced people long, I mean, much longer than I did, but I sentenced under both. And every time I varied from the guidelines, not every time, but I was told, they're there, they're reasonable, they're there for a reason, and they were mandatory then. So I had to follow them unless I could depart. I think every time a sentencing judge varies from the guidelines, he's running a risk. And I think our colleagues have looked at this already and said what he did was substantively unreasonable, in no uncertain terms. Sent it back, and he added six years when he was facing whatever, 30 to life plus 10 for the 924C. I don't see, if we remanded to this judge, that this is going to resolve anything. And I understand the drawbacks of requesting something like this, but I'm wondering why you haven't asked to have it remanded to a different judge. So there's a lot going on there. If I might just start with, the government asked for life plus 50 in the initial sentencing. It asked for 60 years in the second sentencing. Judge Reinhart and his concurrence in Rassam said he saw no reason why, in the case of a foreign terrorist, any sort of departure from the guidelines would be warranted. So I think that's where we would start in terms of thinking, in terms of substantive reasonableness. And I have more to say to your question, Judge Pan. To your question, Judge Henderson, we certainly considered asking for a remand to a different judge. That was not something that we have done in this case. Judge Cooper, throughout the course of this prosecution, showed an incredible depth of incredible thoughtfulness and care to this case. It's something he's handled for more than a decade. And I think, out of respect for his role in this lengthy prosecution, the government has not asked for reassignment to a different judge. He certainly, for example, rejected the defense argument on resentencing that he could simply impose the same sentence and just give different reasons. He understood that this court had ordered him to impose a higher sentence. I think he, as your Honor said, certainly ran a risk of reversal again by varying from the guidelines. And I thought this court said in no uncertain terms that a guideline sentence was warranted, that there was no way to justify anything than a guideline sentence. To more concretely answer your question, Judge Pan, in sentencing, there's of course a lot of discretion afforded to the district judge, but is nonetheless an abuse of discretion standard, which suggests that that can be abused. Numerous courts of appeals have said it is not a rubber stamp review. There must be something that falls outside of what everyone else thinks is reasonable. And so notwithstanding Judge Cooper's unique view of this case, when all members of the eight years is too low for this particular defendant, then it is a substantively unreasonable sentence. And courts of appeals not often, but somewhat commonly have reversed cases involving even higher sentences. For example, the Ali case where the defendant received 30 years, the Fourth Circuit reversed that as substantively unreasonably low. And that was a case in which the defendant didn't accomplish his terroristic goals. He was stopped before that happened. The same was true in Rassam. His 22-year sentence was unreasonably low. He was stopped before he accomplished his goals. From the terrorist perspective, this attack was a success. They breached the U.S. special mission. They burned it to the ground. They killed two Americans in the process. And even accounting for the fact that Catales acquitted for those murders, he endangered American lives. This was an infamous attack that was heard around the world. And under those circumstances, the leader of that attack certainly needs to spend more than 28 years in jail to have received a substantively reasonable sentence. So I thought in reading this record that, you know, Judge Cooper clearly was very thoughtful and was trying very hard to arrive at a sentence that he thought was fair and appropriate. And there might be some disagreement with the way he weighed things. But one thing that struck me as problematic was his attempt to divine factual findings from the jury's verdict. And it just seems to me that juries can, you know, reach a verdict for any number of reasons, including a compromise, where they could find that maybe this defendant was involved in causing the death, but it wasn't proved beyond a reasonable doubt, but maybe by preponderance it was. So I just thought that there was a lot of time spent trying to divine what the jury factual findings were beyond just dealing with acquitted conduct. Because you can deal with acquitted conduct by just choosing, I guess, the lower guideline range, which is 40 to life instead of, you know, what he originally started out with, life plus 10. But this seemed to be sort of the underlying or overarching concern that he had. And I really didn't see the government objecting or trying to correct that methodology. And even when the court asked the prosecutor, what do you think the jury meant? I don't hear the product saying, respectfully, Your Honor, I don't think that we can read factual findings from a jury verdict, and we don't think that's the correct methodology. I just don't see any pushback or objection to that methodology. And I'm wondering why. Do you agree that that's the correct methodology? Well, so two things, Your Honor. It certainly is possible, if not plausible, that the jury thought that Katala caused the deaths by a preponderance, but not beyond a reasonable doubt. And that's what Judge Cooper found.  So there's a finding here. So we shouldn't blind ourselves to the fact, despite the fact that he's acquitted of causing deaths, that by a preponderance, the judge found he was responsible for those murders. There's no question. There were a number of factual findings that I felt didn't make their way into the sentence, such as that he found that the relevant conduct caused or resulted in death, such as that he believed that the verdict was that the defendant did participate in planning the attack and was in contact with the actual perpetrators on the day of, before, during, and after, all that. And the only, I guess, the district court said, I think this is explained by the fact that they didn't know who actually set the fire that actually caused the deaths. But the sentence doesn't reflect those factual findings. There's no question. But I guess what I found interesting about this transcript was just the methodology of trying to figure out factual findings from a verdict and the government not even objecting to that. So I think earlier in the proceedings, there was government pushback on a lot of this fine parsing. So, for example, the defense argued before the first sentencing that the way to read the jury's verdict is that Katala joined this conspiracy at around 1145, after the gates had been breached, after the fires had been set, and only when he first showed up on camera. And the government disputed that. And Judge Cooper agreed with the government that the evidence showed that he procured his militia ahead of time. And so the court rejected that parsing. Likewise, in the first appeal, the defense argued that the jury had rejected facts sufficient to find the terrorism enhancement and the leadership enhancement. And again, we pushed back on that. And this court agreed that the acquittals don't reflect a rejection of specific facts. We have not challenged the district court's ability to subtract out acquitted conduct, which the guidelines now require. And that acquitted conduct was causing deaths. The jury's verdict reflects throughout that Katala was acquitted of the conduct at the annex, where another two Americans were murdered, and acquitted of the causing deaths. And so I think the way to see that is he participated in an attack intending to kill Americans, putting Americans' lives in danger, which this court found to be the best reading of the jury verdict, but that the failure of proof that led to the jury's verdict was they couldn't prove who set the fires. And because there were leaders of other militias and members of other militias, although I would think that the obvious conclusion is that they conspired and coordinated together, and it was certainly a coordinated attack. They all attacked at the same time. But the jury found some sufficient lack of agreement in who set the fires to acquit of  But again, the deaths occurred, the judge found by a preponderance that Katala was responsible for them. And his 28-year sentence, even, again, even subtracting out the acquitted conduct and focusing only on the counts of conviction is shockingly low on this record, which this court has already found. Should Al-Aman's sentence of 19 years in any way inform this appeal? If it does, I think it only underscores how low Katala's sentence is. Al-Aman was convicted of—he didn't carry the—he didn't carry an AK-47, so he was convicted of the two material support charges and the 1363 charges. The jury couldn't reach a verdict on the causing death charges. He wasn't a leader. By all accounts, he was a small, timid man who was afraid of the dark and was effectively Katala's gopher. He's seen in the video in this case next to Katala leaving the talk with a map. And so given his lack of a leadership role, the fact that he had no semi-automatic weapon and, as I said, what was, I think, viewed as kind of a scared participant, I think the fact that he received 19 years only underscores how low Katala's sentence is by comparison. And just a couple of the factual pieces. Age can be an appropriate basis for departure, but it also says that you need extraordinary circumstances. If somebody's going to be 80, you know, once they leave department correction or any prison, what do you perceive as the need for the extraordinary cases? What would that be? Well, I can point to the facts of this case, which is with good time, Katala will get out in his 60s. He was in his early 40s when he was captured by U.S. forces. He was born May 7, 1940, or 1971, according to Wikipedia. So, you know, using that math with good time credit, serving 85% of a 28-year sentence, he would get out in his 60s, which is ample time to, you know, attack the United States again. And so I don't think this case presents the extraordinary circumstances warranting a massive downward variance based on his age. And then in two of the actual explanations, it uses the fact that the 924C apparently was disproportionate, but uses that language twice to justify the sentence. Do you feel like that was an overcounting? I certainly think the judge's analysis of the 924C charge was legally flawed. He characterized, first, it's inconsistent with this court's. He said it is not necessary for deterrence, but this court already said the deterrence interests at stake here, which are preventing this type of terrorist attack and preventing people from leading them, support a stiffer, not a lower sentence. But also the district court characterized the deterrence interests as deterring the possession of AK-47s during a civil war in Libya. But that's not what we're talking about. No one in this case cares about people who possess AK-47s in Libya or in Benghazi generally. It is the fact that he carried this AK-47 during a terrorist attack on an American diplomatic facility and carried the weapon onto the facility. So he was prepared to use a semi-automatic weapon like many of the terrorists did to attack an American diplomatic facility. That's what we're seeking to deter. And by claiming that this is about deterrence of possessions of guns in Libya more generally is clearly a legal error that the district court committed. And then the judge mentioned that the status as a deportable alien increased the severity of the sentence. What do we mean by severity? I assume he meant length. You don't see severity and length being two different things? I do see them as being two different things. But my understanding is he was referencing a Smith departure. And it may be severity in the sense of it's not length. It is the fact that a deportable alien does not have the opportunity to spend the last six months in home confinement. So imprisonment is more severe than home confinement. And so I think that's the severity he was referring to. But as we pointed out, we don't think any sort of variance downward based on his status as a deportable alien is appropriate here, given that he would be returning to his home country where presumably he would be hailed as a hero, much like the Lockerbie bomber was when he was sent home from Scotland. And that was the concern that motivated the Ninth Circuit, in part, in Rassam, that he was going to be sent back to Algeria, his home country, where he not only could attack America again, but where he may be hailed as a hero. OK, and then one last thing. If we were to remand this, again, we're trying not to say that we're making a suggestion of what the district court should do. So how do you very clearly and cleanly get around that notion that this is what this court would be doing? Because the district court could just justify reasons and come to the same number. I mean, I would hope that the court would not. Judge Cooper is a conscientious judge who attempts to follow what this court orders him to do. He believes the 28 years. And he was hoping the government wouldn't appeal again, and we did. I think one of the closest I've seen is I believe it's Mamouni and the Ninth Circuit where they gave a sort of summary at the end with instructions to the district court. And one was not the sentence to receive. But I believe they said the district court needs to give more emphasis or place more weight on. And so I think this court could signal more strongly than it did the first time, although I thought the first time was quite a strong signal of the court really needs to focus on the severity of these crimes, the need for deterrence and the other factors that weigh in favor of a higher sentence. And you wouldn't appeal. I presume a sentence at the bottom of the guideline range of 40. I can't. I can't say what the government would or would not do, Your Honor. I'm not asking you to make a promise, but it just seems to me that. It seems unlikely that reasonableness, it seems unlikely that the government would take yet a third appeal. But if the government has never asked for a sentence as low as 40 years, it reduces life plus 50 to 60 year request. Even a guideline sentence is not presumptively reasonable. And so there may be stakeholders who would want to appeal a 40-year sentence. I haven't seen a case overturning a guideline sentence as unreasonably low. I believe there are cases overturning them as unreasonably high, but it's not outside the realm of possibilities. Can I ask you about, do you consider packaging, which this judge insisted on, procedural? And if you do, I'm wondering why you didn't challenge the sentence procedurally. I don't know the answer to that, Your Honor. I haven't thought about it. We viewed the packaging as a justification for the ultimate 28 years, and we think it actually doesn't justify a 28-year sentence. I hadn't thought about it as whether it was a procedural error, but I guess I should have. All right. We'll give you some time to reply. Thank you. Is this right? Thank you. Lisa Wright for Mr. Catala. I may please the Court. Um, this Court has only, as far as I know, in 21 years since Booker found one sentence substantially unreasonable. That's this, what the panel found. We believe there was some flawed understandings that underlay that, but that's, we accept, of course. But under Gardelini, it's, the guidelines are not to be given the sort of way that they would have to be given to find that Judge Cooper abused his discretion. I want to just step back that on the four counts that Mr. Catala was convicted of, he got either the maximum authorized by Congress or, except for one, they got two less, or the guideline sentence. So count one maximum was 15 years. He got 15 years. Count two maximum, 15 years. He got 15 years. The count 16 maximum was 20. He got 18 years, only two less. And count 18, the guidelines call for a flat 10-year consecutive sentence, and he got a 10-year consecutive sentence. But nevertheless, the government argues that this total 28-year sentence is substantively unreasonable, which requires that no reasonable judge could justify this sentence, which is a 30 percent variance of 12 years off 40 years. The panel was concerned and found unreasonable. What they thought was a 60 percent variance, and this is a 30 percent variance. The government acknowledges that. It seems to me, Ms. Wright, that in terms of the guidelines and the statutory maximums, et cetera, really any sentence could be justified by running things consecutively, by saying that the 924C is 10-2 life. So it just seems that the whole range of sentences was available. And so all of these considerations are just logistical things that you would have to put in place to get to the number that's the correct number. And just taking a step back, looking at this case writ large, we're talking about a defendant who was a leader in planning an armed, highly violent attack on a U.S. diplomatic facility. Deaths resulted from it. This is somebody who procured firearms in advance of the fight, warned people away, don't interfere, don't get involved, send your men away, who was, one can infer, quite involved on the actual night that these events occurred because there are phone records that show him talking within half an hour to people who are on the scene perpetrating the events. And so the question is, that conduct, which he was found guilty of putting aside the deaths, what is an appropriate and reasonable sentence for someone who does something like that? And I think we can sort of descend into the details and the minutia about, you know, percentages and this, that, and the other. But I just think the overarching question when we're talking about substantively unreasonable is this is what the guy did. Does 28 years seem to cover it? And he went to trial. It's not like he pled. There's no kind of mitigation in that respect. And 28 just doesn't seem to capture the seriousness of the conduct. Well, that's just kind of like the bottom line on substantive reasonableness to me. Well, I would say that that is really substituting Court of Appeals judgment for Judge Cooper's judgment as that, as Guardalini says, is not. Well, we're required to review for substantive reasonableness. So it's not like I just decided I wanted to like, on this. It's before me. Right. No, I understand. But the amount of deference that needs to be given is so great. And I hear one point your Honor just made about the wide range of sentences available and up to life and all that. That would require an upward departure, just to be clear.  No, I understand that. But I just think all, a judge could justify any sentence up to life on this record. By employing the tools, as you said, now I'm doing upward variance on the 924C, I can get to life. So it's just, it turns out like the bottom line is what about this number? And when you think about factors that were identified by the prior panel, such as you can't call this a property crime, you know, we are talking about deterrence of, you know, potential terrorists who want to do harm to America. These sentences have to, you know, reflect that this is, you take this really seriously and you're going to get a stiff sentence. All of these considerations kind of go into that reasonableness calculation. But at the end of the day, it's kind of, this is what he did. And does this number reflect it? And I just feel like that was kind of lost in this sentencing. I think, I don't think that the district court, like, decided this case accepting 100% of the government's narrative. They just didn't, and the government doesn't accept that. There are factual findings. He said by a preponderance of the evidence that this conduct resulted in death. He said, he made a finding. He said the best. So I kind of don't think it's correct to try to figure out what the jury findings are. But to the extent he did, he said the jury's finding reflected that Mr. Katala did participate in the planning and was a leader, etc. It was definitely terrorism, etc. But the most common sense, he said, view of the verdict is that they just didn't know who set the fire that caused the deaths. But the government has, the judge does not have to sentence on his preponderance view. He's allowed to, but he doesn't have to. Under Kimbrough, he's allowed as a policy matter to say, I'm going to honor, the jury system is the crown jewel of democracy. And I am going to balance that and sentence. I agree. But then we're at a guideline range of 40 to life. So then we start from there. Like, if you want to take out the acquitted conduct, we're at 40 to life. And now acquitted conduct has been taken care of. Not entirely, because it's not the case that the acquitted conduct only bears, the guidelines are one 3553 factor, A4. The fact that he didn't cause deaths, the fact that the district court had a sense of what the jury thought had actually occurred, those factors can factor into A1, A2, A3 as well. I agree with that, but he said what he believed the facts were. And the facts were that Mr. Katala was a leader. It was terrorism. He did participate in the planning. He did all of that. And the verdict is explained by the fact that the jury didn't know. He thinks this is what Judge Cooper found. Didn't know who set the fire that caused the deaths. So he should be sentencing on that conduct, that he did participate in all of it, that he was a leader, that it was terrorism, all of that. But this, I just don't see that analysis happening. I don't see that he has to sentence based on his findings as opposed to what he thinks the jury found. Doesn't he have to sentence based on what he finds the facts on? What is he sentencing on if he's not finding based on the facts that he found? He said, I am honoring the jury's verdicts. And I think based, he says many times, based on what I believe the jury found. But he doesn't say that in the context of all these other variances. I think he does, because he says in light of the jury's verdict is partly why he's saying the terrorism overstates, because there was no deaths. And I mean, I think he does use that phrase over and over. But is that legal error, though, in that particular instance, for him to say that this terrorism overstates and this is not what Congress intended? And then you read with a definition of terrorism, and it includes damaging computers. Yeah. I mean, was there any basis for him to say that this wasn't terrorism in some form? I mean, that's a point I wanted to make, that there could be some procedural things he said that aren't right or whatever. The court could find that. But the government has not made a procedural claim. They can't get relief because the judge said something. The question for this court. But is it substantively unreasonable to say something that is legally incorrect and then paste your sentence on it? No, because no, because the substantively unreasonable is about given the facts and circumstances, could a reasonable judge get to this number? Not necessarily even. But is a reasonable judge presumed to be one that is not making legal errors or no? I mean, legal errors like that are procedural. The government was welcome to appeal that sort of thing, but they didn't. And then it would have to go back for him to like eliminate whatever the error was and do it again. And they'd opted not to do that. They're going. But are you saying that when we review for substantive unreasonableness and we see legal error, we have to ignore it? Well, when they don't appeal and not that you know. But I mean, as it relates to reasonableness. I mean, I wouldn't say it's legal errors, I don't think really factor in, I mean, I think you look at the facts and circumstances, that's what Gardelini says, and that's and the question is just, can you get there? And I understand you, but if you can't get there without legal error, you still think that can be reasonable if you can't get there? And I guess if you're saying like, that's not a proper fact and circumstance, you know, maybe that, you know, that might be. But I mean, I don't think anything he said here, the government admitted that a lot of it is permissible. I did want to point out that. Well, what did the co-conspirators get? Because that's also a comparator issue. And yes, it's reasonable. Well, I think this, Mr. Lenners just said, I think that, I think his name is Alan Ilaman, got 19 years and he was convicted of basically the same things except the gun. Well, if you think about it, the gun is 10 years. So that's really quite, that's comparable. And the government dismissed their appeal in Mr. Ilaman's sentence. They let that stand. But for Mr. Catala, they're not, they're taking a different approach. And I think the government is. But the consecutiveness of the 924C was mandatory.  But then why doesn't your client have more to offer than just the gun? In other words, you're trying to make it sound like, oh, that's comparable because you had to have 924C and get the extra 10 years. Take the gun out. Your client still has more that happened that he's responsible for. I'm saying that Mr. Catala got essentially 18 years on the counts that weren't the gun and Mr. Ilaman got 19 years and the government dropped that appeal. But he shouldn't get less than. I don't think we're in the business of nitpicking over like a year or whatever, or even. No, you have a leadership role. Yeah, a leadership role. But I mean, this court never approaches these cases like that where it says, well, I think a leadership makes him pass means this isn't high enough. I mean, it's never happened in all these years. But even if we don't have to get that granular, isn't the fact that for the same offenses, Mr. Catala was a leader and he did a bunch of things in the record that showed his awareness of what was happening and his intent that it happened, et cetera, compared to somebody who got a greater sentence just for those three counts, who was his subordinate. And I guess what Mr. Leonard says was his gopher. That doesn't seem reasonable. It doesn't seem reasonable. Does that seem reasonable to you? Yes, it does. I'm not saying that if I was the judge, I would set it up that way. But why is it reasonable for the leader and the boss to get a lower sentence than his gopher for the same charges? The question is just, is 28 years a reasonable sentence for what Mr. Catala did? But part of reasonableness is, is it reasonable in comparison to what other people are getting for similar conduct or different conduct? That's got to be. I mean, I mean, this happens all the time where people do not end up. Things are not directly. Who knows what else Judge Cooper thought about Mr. Illimon? We don't know what his other factors were, et cetera. I don't. I mean, I just think the court needs to. You usually get a 5K substantial departure, perhaps if you were a higher leader. But there's something that you've offered up to get to that place. Yeah, I mean, I don't think we know enough about Mr. Illimon's sentence to say that somehow that makes this substantively unreasonable. And, you know, I think at the time, I don't think the government made that argument at the time of the sentencing. I think I have the timing right that, you know, I know he had been sentenced, let's say that, by the time this happened. I didn't hear the government saying you can't, you have to give him at least more than. You know, he did have to. It's just when we're trying to get a substantive reasonableness, we're struggling a little bit, too, and trying to figure out what are the contours of that. And so we're looking for, like, the circumstantial evidence that indicates whether this is reasonable or not. And certainly what your co-defendants get has to be part of that. I mean, if we were doing that in other cases, there would be so many substantively unreasonable sentences. This court's never found one. That's not how. I mean, sentencing is, of course, individual based on the defendants. But if you were to tell me, well, the gopher cooperated and got substantial assistance time or it was something like that. And was there anything like that? Or are we just talking about the same conduct? That was not discussed by I mean, that that was not put into the record one way or the other. I don't think in his sentence argued like that. I mean, I just think the degree of discretion is not being appreciated. And also, I think that the government. We're trying to figure out what are the limits to the discretion in your view? Because if we are here, it's before it's extremely limited. There's I mean, that could not be more clear in the law that post Booker, there's just an incredibly wide range of reasonable sentences. And to say that a 28 year sentence is insufficient when it's the maximum minus two years plus the guideline range. And I'm sorry, what is it's not the maximum. It's the maximum on each count minus two years concurrent. But like, just to argue that there's a requirement substantively that no judge can give concurrent. Well, the guidelines say that if the guidelines are higher than. Accumulating the max is like, you should run them. We totally disagree that that's what it says. It does not say if the guidelines are higher, it says the total punishment is higher. That's the point. It's not saying what does the guideline sentencing table say? It's saying what does what sentence have you selected? Once you select your sentence, we're going to figure out how to allocate it. And the guidelines want to select a guideline sentence, then you have to run these consecutive. If you want, if you want to select a guideline sentence, you have to run these consecutive. That's why he didn't select a guideline sentence. That was one of his justifications because he doesn't believe consecutive sentencing is appropriate when it's essentially the same conduct. And there's lots of authority for doing that to the ultimate reasonableness of the conducts and the number. I'm just pointing to the different rationales. He gave facts and circumstances, which, by the way, were not discussed, but not sort of in front of or discussed by the panel because, you know, he said what he said the first time highlights the first time. The second time he says, let me go through this more. And he puts in new facts and circumstances. He adds six years. He talks about he does Dean. The government admitted below that Dean was a proper thing the judge could consider, but she didn't do it the first time. And our point is now he has that can account for as much as 10 years. It's a perfectly legitimate departure ground or variance ground. The one thing I thought was missing was right was this. He never said why he thought 40 to life was not a reason. He just immediately started, I guess, trying to find reasons to vary downward to get to some lower number without really addressing. I was I found it. Maybe it's because it was a second sentencing and there were two, but there wasn't just the whole. This is what the defendant did. This was very serious. There's different deterrence. You know, the line is this, but I don't think the guideline is reflective. But I don't know. It just he immediately went to varying downward without really explaining why the guideline range was not. Yeah, I think that just confused me. Well, I do think a lot of things had already been said either. You know, I know. Yeah, I read that down, too. But I mean, and in his opinions and whatnot, he made clear like he didn't say that. But he I would say as to why 40 is not he said, basically, and I guess this is the. Just of things he said of actuarial life sentence is too much. And I just cannot imagine that a district court isn't the one who gets to decide that when he sat through the whole trial. And knows the case best. Read all the jury notes. Understands everything about it. The government just I actually was wondering about that, because there was some discussion with here with Mr. Leonard's, too, about this, that he said that. If this defendant got to be an old man, it's unlikely he would harm America again or would have the opportunity to do so. And I was just wondering if there's any support for that, because I guess there are cases that say that terrorists are the least likely to be rehabilitated. I think if you are somebody who goes out and I guess mugs people on the street, you're less likely to do that when you're 80. But if you're somebody who doesn't go to the scene of the riot, but does all the prep work and the masterminding, I don't know why you're limited from doing that when you get older. I mean, look, look at all the old people who are leaders in our government. I mean, I don't know if you're like if you're the guy that, is the mastermind and just calls the shots. I don't know why being old would prevent you from continuing to do that. Well, I don't think he relied on that as some reason to go down. OK, what he said, I thought it was just mentioned it when he was talking about whether a Dean variance was appropriate in this case. He just said, but he also said for specific deterrence, he doesn't think this defendant is likely to do that. I just don't really see why not. Yeah, well, we had just cited generic. Like you're saying, we cited like we always do that things go down with age. And all he said is, I don't doubt that and that would be true of you. But he didn't rely on that to go down. He was just saying that's not a reason that I shouldn't grant a Dean variance, which the government admits he can grant a Dean variance. And then on this, the government, I just want to say this one thing before I forget that I just think the government isn't accepting that what the verdict even was. If you look in their summary of argument, it's only a few sentences, but they describe the crimes of conviction completely wrong. They say the crimes for which he was convicted are, quote, conspiring with and providing material support to the very terrorists who murdered two Americans and went on to murder two more. And if you look on pages 629 and 630 of the panel opinion, it's very clear that that is not what the panel says the verdict was. They're saying the best explanation is that he did not. They did not. The government did not prove that he really any conspiracy with any other militia, but certainly not the ones that set the fires. That's what it says. It's conspiring with his own militia people. His own militia people were the ones on the scene, like the three of them. There were some there were some, but there were so many militias. And I mean, the panel is saying I should grab it. Are you saying that he wasn't convicted of conspiring with people who perpetrated the attack? No, not the attack. He says conspired with the very people, very terrorists who murdered the Americans. OK, that's wrong. OK, the panel says it's wrong. And they say Judge Cooper's right that that is not what they found. So I just think that's in their summary of argument. And it just indicates that they just aren't grappling with what actually that. And that's just one aspect of the judge to putting that aside. I feel like Judge Cooper should have sentenced based on the facts that he found. And the facts that he found were putting aside the resulting death because he's entitled to discount the acquitted conduct, which he did by if we just go to the different guideline range, I think at least on the guidelines, he discounted. But he found that the defendant did conspire with people who are on the scene and was closely in contact with them during this whole attack. But he decided as a matter of policy that he thought honoring the jury verdict merited putting aside, he says it so clearly, putting aside his own personal opinion. Once the guideline has taken care of that, what more can he do with that? Because there's reasonable and appropriate and not double counting. Well, there's all the other 3553 factors. That's one thing. But also just some of these things he relied on are just so well-established. Like, ding, the feeling that consecutive sentences are not appropriate here. It's not correct that 5G 1.2 is telling him he has to try to drive towards the sentencing table, which, by the way, I mean, if there's any doubt in the court's mind, I want to make discuss the fact that the sentence table for this is not 30 to life. It's 30 to 50. There is no life sentence available. You've forfeited that, though, haven't you? How can I forfeit something? I'm not making a claim based on it. I'm simply telling the court if they want to know what the correct comparison is, this is the correct comparison. I'm not claiming anything. But if the district court, if you didn't make this argument in the district court and the district court didn't abide by it, are we allowed to revise the guideline range? This was perfectly clear in the district court. The government told the district court we want a life sentence. You're going to have to depart to get there. No, I understand. And we said the same thing at sentencing. And it is true that as the case went on, the language was not precise in saying life. People are focused on the low end. Nobody is thinking the panel is going to take the life. I think this comes back to my original point, which is that really anything, the full menu of sentences was open and then you could adjust. Including this sentence. I mean, that's what our point is. There's a huge menu of sentences and he chose this one. I know. But if he had departed down to probation, you would agree that was unreasonable. At some point, yes. But at what point are they satisfied? I don't think we're supposed to be dancing on the head of a pin here. It's not like he said, I considered all the other sentences. I considered 25. I considered 30. This is where I landed. It's hard. He's having to balance different. Policy considerations and concerns and plus facts about Mr. Also, I just want to the government actually said, I don't forget to say this on the issue of whether whether he can sentence. Based only on what the jury actually rejected or what he mean, what they necessarily rejected or what they actually rejected. And in response to our hearing petition, they said, quote, nothing about the panel's discussion addressing the proper guideline calculation. Absent quoted conduct prevents a district court from accounting of the facts that it believes the jury actually rejected. They admitted that on rehearing that he's allowed to based on everything he's witnessed his 7 weeks of trial, the jury notes, et cetera, watching the jury's faces as they listen to the government's witnesses. He's allowed to rely on that. Also, they don't seem to accept that there were facts that the judge didn't accept as part of they didn't accept all of their narrative by preponderance. He said. He said that Mr. Katala was perhaps not the stone cold premeditated terrorist. The government made him out to be. I mean, call that thing praise the next sentence. He was perhaps not the stone cold premeditated terrorist. The government makes you out to be. And I don't I don't have that in front of me. And then he said, but you're the person who could resort to violence to get. He said, yeah, but that's not. He's saying he's making a distinction between those saying someone is a product of a culture of violence doesn't mean they're still resort to violence. And he's a violent person is physically. Well, so are lots of people. I mean, I don't understand what I mean. I'm saying that the the court rejected in part the government's narrative as a matter of factual finding. And unless they're saying that's clear error, I don't we can't just decide this case as if their version of what happened is correct when they've already admitted. I'm just looking at the factual findings that Judge Cooper found, like when he was deciding what the guideline range was. And it doesn't seem that what he said at the sentencing is consistent with that. Because that's right. This is a property crime. While you've made a factual finding that there was a leadership role, there was said the jury people died. No findings. He said the jury found essentially a dangerous and violent property crime. He didn't leave out the dangerous and violent part. So he understood that there was that they found terrorism. He left the terrorism part out. They didn't necessarily reject terrorism is all that's been found. Oh, well, you're saying that counts. Yeah. Yes. And he got 10 years for that. He got 10 years for the terrorism because without the terrorism enhancement, he would have been at six and a half to eight years. It raised it to 30 to 50. So and he gave him 20 terrorism. I mean, unless the rule is that terrorism means you die in prison in every single case, which, you know, if that's the rule, then I guess we should be honest about that. But it's not. You can't get there and defer the way you're supposed to defer under Gardelini. I mean, we need to move on. Okay. I'm sorry. One thing. Are you still holding on to your procedural defect? Um, I am satisfied with what I've said in my briefs about it, unless there's questions. All right. Let's give Mr. Letters two minutes. Thank you, Your Honor. I'll stick to it very quickly in terms of the defense argument about Judge Cooper saying legally erroneous things and whether that's a procedural or a substantive defect. It is a substantive defect, as this court and Gaul both made clear. As this court explained in its first opinion in this case, when reviewing for substantive reasonableness, this court must ensure that the district court has explained its conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications. Well, a legally erroneous statement is not a sufficient justification. The district court found that Petala was someone who might readily resort to or order violence in furtherance of whatever ideological or political goals he might have. In other words, a terrorist and a terrorist who committed a completed act of terrorism in this case. And his leadership role distinguishes him from Al-Amam. One of the reasons the government did not use Al-Amam as a comparator is we had appealed his sentence. We thought it was too low. And that case was still on appeal during the resentencing and when we filed our opening brief in this case. Ultimately, the parties resolved that on appeal. Al-Amam dropped his appeal. The government dropped its. But that doesn't mean the government accepted Al-Amam's sentence. But his sentence underscores how unreasonable Petala's was. The leadership role that Petala had doesn't just factor into the guidelines, but it captures the entire attack. He's a cause of the attack. Al-Amam was not among the men procuring weapons ahead of time. Al-Amam was not on the one being called by the leader of the February 17th militia who Petala said do not interfere. Al-Amam was not in this case bragging afterwards that he wished he had killed more Americans, including those at the airport. And so for all of those reasons, we think that Petala's sentence is substantively unreasonably low and should be reversed. All right. Thank you.
judges: Henderson; Childs; Pan